IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. NPIMNEE


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

HOPE T. NPIMNEE, APPELLANT.


Filed March 24, 2026.    No. A-25-204.


Appeal from the District Court for Lancaster County: RYAN S. POST, Judge. Affirmed.

Hope T. Npimnee, pro se.

Michael T. Hilgers, Attorney General, and Erin E. Tangeman for appellee.


MOORE, PIRTLE, and FREEMAN, Judges.

MOORE, Judge.

## I. INTRODUCTION

Hope T. Npimnee appeals from the order of the district court for Lancaster County, which denied his amended motion for postconviction relief without an evidentiary hearing. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

Following a jury trial in December 2022 and January 2023, Npimnee was convicted of first degree sexual assault and sentenced to 35 to 40 years' imprisonment. The following background was taken from the opinion of the Nebraska Supreme Court on direct appeal. See *State v. Npimnee*, 316 Neb. 1, 2 N.W.3d 620 (2024).

In July 2021, S.M. spent the night drinking in downtown Lincoln. S.M. began conversing with a man later identified as Npimnee. Though she does not remember doing so, she apparently got into Npimnee's vehicle.

S.M. testified that she next remembered being parked in a parking lot with Npimnee, who left the vehicle and reentered it on the passenger side. S.M. testified that Npimnee unbuttoned and removed her jean shorts and that she told him, "[N]o, this isn't happening," but that Npimnee did not stop. S.M. testified that Npimnee performed oral sex on her as she continued to say no, and she further testified that she her felt intoxication level was an 8 or 9 on a 10-point scale. S.M. further testified that Npimnee did not stop until a police officer drove upon the scene and stopped behind Npimnee's vehicle.

S.M. testified that she immediately got out of Npimnee's vehicle, "pulled [her shorts] up," and reported the incident to the officer. On cross-examination, S.M. admitted that she told law enforcement that Npimnee penetrated her with his finger. She further testified that it was "possible" she also told law enforcement that Npimnee tried to penetrate her with his penis and that he might have exposed his penis to her. By the time of trial, S.M. testified only that Npimnee performed oral sex on her.

After her initial report to the officer, S.M. was taken to the police station to make a formal statement. Her roommate arrived later and joined S.M. at the police station. The roommate's testimony, as well as a history of text and social media messages between S.M. and her roommate (replete with misspellings and other indicators of possible intoxication) were also offered into evidence. S.M. testified that she felt less intoxicated as she was giving her statement to law enforcement at the police station, perhaps a 6 or 7 on a 10-point scale. S.M. went to the hospital for an examination by a sexual assault nurse examiner and a blood draw. The blood draw revealed that S.M.'s blood alcohol level was .109 as of approximately 5:45 a.m.

Npimnee initially denied all sexual contact with S.M. He eventually gave a statement that he and S.M. had been kissing and that he moved to the passenger side of the vehicle and attempted to perform oral sex on S.M. Npimnee said that S.M. told him, "no," so he stopped. It was at about this time, according to Npimnee, that the officer arrived.

DNA testing was done on swabs taken from Npimnee, while still on the scene of the incident, as well as on swabs obtained from S.M.'s examination. That testing showed that Npimnee's hands contained a mixture in which there was "very strong support" for S.M.'s inclusion as a major female contributor. S.M.'s vaginal, mons pubis, and external genital swabs all tested presumptively positive for saliva. Further testing on the mons pubis swab showed "very strong support" that both Npimnee and S.M. were contributors to the mixture found on that swab.

"YSTR testing," which looks specifically at male DNA, was completed on the vaginal and external genital swabs, because autosomal or regular DNA testing could not be completed because of the overwhelming presence of female DNA. The testing of the vaginal and external genital swabs showed that on both swabs Npimnee was included in a profile with a statistic that, "of 13,228 YSTR DNA profiles, this profile was observed zero times [and was] not expected to occur more frequently than one in every 4,461 ... males" in the United States.

On direct appeal, Npimnee assigned that the district court erred in (1) instructing the jury on two alternative and contradictory theories of the case; (2) instructing the jury on the theory that S.M. was so intoxicated as to be incapable of consenting, because there was no evidence that S.M. was severely intoxicated; (3) failing to instruct the jury on the defense of consent; (4) restricting Npimnee's ability to cross-examine S.M.; and (5) denying Npimnee's motion to dismiss at the conclusion of the State's case. Npimnee also assigned that his trial counsel was ineffective.

The Nebraska Supreme Court found that there was no error in the trial court's instruction to the jury and no error in the trial court's decision not to allow continued impeachment of S.M.'s prior statements. In addition, Npimnee's allegations of ineffective assistance of counsel were insufficiently alleged and thus were not preserved for appellate review. See *State v. Npimnee*, 316 Neb. 1, 2 N.W.3d 620 (2024).

On June 28, 2024, Npimnee, now self-represented, filed a verified motion for postconviction relief. An amended motion was filed on September 3, which set forth 10 claims for relief. In his amended motion, Npimnee alleged claims of ineffective assistance of appellate counsel for failing to raise various issues on direct appeal relating to S.M.'s blood alcohol level, the State's publication of a PowerPoint slide during its closing argument, and the exclusion of felons from the jury pool. Npimnee also asserted numerous layered claims of ineffective assistance of counsel. Additionally, Npimnee alleged that the Nebraska Supreme Court erred in finding on direct appeal that the evidence was sufficient to support his conviction and that the combination of all the issues raised in his amended postconviction motion resulted in cumulative error.

On February 25, 2025, the district court entered an order denying Npimnee's amended motion for postconviction relief without an evidentiary hearing. In addressing Npimnee's claims, the court determined that they were either procedurally barred, refuted by the record, or did not otherwise warrant an evidentiary hearing.

Npimnee appeals.

## III. ASSIGNMENTS OF ERROR

Npimnee assigns, consolidated and restated, that the district court erred by denying the various claims raised in his amended motion for postconviction relief without an evidentiary hearing. Npimnee also makes an "actual innocence" claim and assigns that the Nebraska Supreme Court erred by failing to recuse the judge who presided over Npimnee's trial and postconviction proceedings. Npimnee further assigns that the district court erred by failing to appoint Npimnee postconviction counsel and grant his motion for summary judgment.

## IV. STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Goynes*, 318 Neb. 413, 16 N.W.3d 373 (2025).

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law which an appellate court reviews independently of the lower court's ruling. *State v. Harms*, 315 Neb. 445, 996 N.W.2d 859 (2023).

Failure to appoint counsel in postconviction proceedings is not error in the absence of an abuse of discretion. *State v. Epp*, 299 Neb. 703, 910 N.W.2d 91 (2018).

## V. ANALYSIS

### 1. Denial of Postconviction Motion Without Evidentiary Hearing

Npimnee asserts that the district court erred in denying his amended motion for postconviction relief without an evidentiary hearing. In his amended motion, Npimnee sets forth

10 separate claims, alleging ineffective assistance of appellate counsel, sufficiency of the evidence, and that the combination of all the issues raised in his postconviction motion resulted in cumulative error. On appeal to this court, Npimnee presents arguments with respect to each of those claims. Before addressing Npimnee's arguments, we first set forth the general principles of law applicable to our analysis.

Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *State v. Davis*, 317 Neb. 59, 8 N.W.3d 247 (2024). The allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. *State v. Goynes, supra*. An evidentiary hearing is required on a motion for postconviction relief unless: (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief. *Id*.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Betancourt-Garcia*, 317 Neb. 174, 9 N.W.3d 426 (2024). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. The likelihood of a different result must be substantial, not just conceivable. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022). The two prongs of the test under *Strickland v. Washington, supra*, may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *State v. Cox*, 314 Neb. 104, 989 N.W.2d 65 (2023).

A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review. *State v. Stelly*, 308 Neb. 636, 955 N.W.2d 729 (2021). When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on direct appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will first look at whether trial counsel was ineffective under the test in *Strickland v. Washington, supra*. *State v. Betancourt-Garcia, supra*. If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue. *Id*.

(a) Ineffective Assistance of Appellate Counsel

This postconviction proceeding was Npimnee's first opportunity to assert the ineffectiveness of his appellate counsel. He does so in eight regards.

*(i) Claims Not Objected to at Trial*

In his postconviction claims Nos. 1, 3, and 4, Npimnee raises allegations that appellate counsel was ineffective for failing to raise various issues on direct appeal relating to S.M.'s blood alcohol level, the State's publication of a PowerPoint slide during its closing argument, and the exclusion of felons from the jury pool.

The district court noted that trial counsel did not object to the admission of S.M.'s blood alcohol content, the PowerPoint slide, or the exclusion of felons as potential jurors. A litigant's failure to make a timely objection waives the right to assert prejudicial error on appeal. *State v. Johnson*, 314 Neb. 20, 988 N.W.2d 159 (2023). An appellate court will not consider an argument or theory that is raised for the first time on appeal. *Id.* When an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *Id.* Because no objections were made on these grounds at trial, these claims were not preserved for appeal. Thus, Npimnee cannot show a reasonable probability that the result of his direct appeal would have been different had appellate counsel included these claims on appeal.

Further, the district court found that Npimnee did not allege in his amended postconviction motion that trial counsel was ineffective for failing to object on these grounds. On appeal, Npimnee now asserts that these claims raised in his amended motion included implicit layered claims of ineffective assistance of counsel. A review of the record reflects that Npimnee did not raise layered ineffective assistance of counsel claims on these grounds in his amended motion. An appellate court will not consider for the first time on appeal claims that were not raised in the verified motion. *State v. Munoz*, 309 Neb. 285, 959 N.W.2d 806 (2021).

The district court did not err in denying an evidentiary hearing on claims Nos. 1, 3, and 4.

*(ii) Layered Claims of Ineffective Assistance*

a. Failure to Call Officer as Witness

Claim No. 5 alleges that Npimnee's appellate counsel was ineffective for failing to assign error on direct appeal to the failure of trial counsel to call a specific police officer to testify. He alleged that the officer was the "UNLPD Supervisor that oversaw the entire case, reviewed reports, interviewed Npimnee, and watched S.M.'s interviews." Npimnee also alleged that the officer would have "testified to intoxication and [S.M.'s] capacity to resist."

In a motion for postconviction relief, a defendant is required to specifically allege what the testimony of potential witnesses would have been if they had been called at trial in order to avoid dismissal without an evidentiary hearing. *State v. Cox*, 314 Neb. 104, 989 N.W.2d 65 (2023). The district court found Npimnee provided only conclusory allegations as to the officer's purported trial testimony. We agree. He did not specifically allege what the officer's testimony would have been and how it would have been favorable to his defense, and thus, he did not provide allegations sufficient to establish either deficient performance or prejudice on behalf of trial counsel and appellate counsel.

Npimnee attempts to supplement this claim by providing additional allegations in his brief on appeal. However, when considering whether the district court correctly denied the motion without an evidentiary hearing, an appellate court will not consider factual allegations made for

the first time on appeal. See *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018), *disapproved on other grounds, State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018).

The district court did not err in denying an evidentiary hearing on claim No. 5.

### b. Failure to Admit Video Evidence

Claim No. 6 alleges that Npimnee's appellate counsel was ineffective for failing to assign error on direct appeal to the failure of trial counsel to admit video evidence of S.M.'s interviews with law enforcement. He claims there are a "litany of legal maneuvers" trial counsel could have used to admit this evidence and then employ the video evidence during cross-examination and for impeachment purposes.

The district court found that Npimnee could not establish a reasonable probably that he would have been acquitted but for trial counsel's failure to admit the videos at trial. On direct appeal, Npimnee claimed that he should have been permitted to cross-examine witnesses regarding statements S.M. made to law enforcement in which she claimed that Npimnee had penetrated her with his finger and attempted to penetrate her with his penis. Those questions were asked of S.M. at trial, who admitted on cross-examination that she made the statements. The State objected when Npimnee attempted to elicit those statements in the testimony of law enforcement officers who interviewed S.M. The court sustained the State's objection. See *State v. Npimnee*, 316 Neb. 1, 11, 2 N.W.3d 620, 629 (2024). The Nebraska Supreme Court found that S.M. "was effectively impeached with her prior statements, and those statements were not admissible as impeachment during the testimony of subsequent witnesses as they were cumulative to [S.M.'s] own admission on cross-examination." *Id*. at 12-13, 2 N.W.3d at 629.

As established on Npimnee's direct appeal, the jury was aware that S.M. initially told officers that Npimnee had digitally penetrated her and that he might have attempted penile penetration in addition to exposing himself to her. The jury was also aware that she later gave statements indicating that neither digital nor penile penetration was attempted. Finally, at trial, S.M. testified during her direct examination that Npimnee only performed oral sex and she agreed on cross-examination that she had previously made certain statements inconsistent with her later statements and her testimony at trial. Thus, given that the jury had knowledge of S.M.'s inconsistent statements, there is not a reasonable probability that Npimnee would have been acquitted but for trial counsel's failure to introduce video evidence of those inconsistent statements.

The district court did not err in denying an evidentiary hearing on claim No. 6.

### c. Failure to Question Jurors

Claim No. 7 alleges that Npimnee's appellate counsel was ineffective for failing to assign error on direct appeal to the failure of trial counsel to question if any of the jurors knew Npimnee personally. Npimnee alleges that he knew three of the jurors, but Npimnee did not provide the names of these jurors, nor did he allege that he had informed his trial counsel that he knew these jurors. Thus, Npimnee's amended motion did not provide sufficient allegations in support of this claim. See *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022).

Additionally, as noted by the district court, the record from voir dire established that the potential jurors were asked if they knew or recognized Npimnee and that no one responded

affirmatively. Npimnee now argues, for the first time on appeal, that counsel was ineffective for not requiring a verbal response from each juror. This claim, however, cannot be addressed as it was not raised in his amended motion. See *State v. Munoz, supra.*

The district court did not err in denying an evidentiary hearing on claim No. 7.

### d. Failure to Call Aaron Vigil as Witness

Claim No. 8 alleges that Npimnee's appellate counsel was ineffective for failing to assign error on direct appeal to the failure of trial counsel to call Aaron Vigil as a witness to "testify on excited utterance, motivation to report sexual assault, and variations of the sexual assault S.M. shared with him." Npimnee makes general assertions in his amended motion regarding S.M. discussing the assault with Vigil, but he does not explain with specificity what was said during those conversations or how it would establish a reasonable probability of an acquittal had Vigil testified to those conversations.

As the district court found, Npimnee provided only conclusory allegations as to Vigil's purported trial testimony. He did not specifically allege what the testimony would have been, and thus he did not provide allegations sufficient to establish either deficient performance or prejudice on behalf of trial counsel and appellate counsel.

The district court did not err in denying an evidentiary hearing on claim No. 8.

### e. Failure to Preserve Claims for Postconviction Review

Claim No. 9 alleges that Npimnee's appellate counsel was ineffective for failing to preserve fifteen other alleged ineffective assistance of trial counsel claims.

As found by the district court, in subparts (a), (b), (c), (d), (e), (m), and (n), Npimnee merely alleges conclusions without any supporting facts. We agree. In subpart (f) he repeats his claim regarding the cross-examination and impeachment of S.M. using video interviews, which we addressed above. In subpart (g) he disputes a continuance but does not allege any ineffective assistance for failure to file a motion for absolute discharge. In subpart (h) he repeats his claim regarding the possible testimony of Vigil, also addressed above. In subpart (i) he speculates that had another officer been called to testify, that officer could have offered an expert opinion on S.M.'s capability of resisting. Npimnee does not allege what the testimony would have been. In subparts (j) and (k) he faults trial counsel for not obtaining expert testimony but states "trial counsel was made ineffective by not being provided enough time to review YSTR DNA results and attain expert interpretation of the nuances of YSTR DNA testing." Yet he did not raise this alleged late disclosure on direct appeal or claim appellate counsel was ineffective for not raising it on direct appeal. And in subpart (l) he returns to the alleged inconsistencies in S.M.'s video interview, addressed repeatedly above.

In his final allegation, subpart (o), Npimnee asserts that his appellate counsel was ineffective for failing to allege that his trial counsel was ineffective for failing to move to recuse the trial judge. This claim is refuted by the record, as Npimnee repeatedly moved to recuse the trial judge and was denied. Further, Npimnee did not seek review of his recusal requests on direct appeal. Although he alleged a layered claim of ineffective assistance of counsel in his amended motion, he does not allege appellate counsel was ineffective for not separately assigning as error on direct appeal the denial of his repeated motions to recuse. A motion for postconviction relief

cannot be used to secure review of issues which were or could have been litigated on direct appeal. *State v. Parnell*, 305 Neb. 932, 943 N.W.2d 678 (2020).

In his brief on appeal, Npimnee also raises the "obvious error" that the trial judge failed to recuse himself. Brief for appellant at 4. He argues that this claim was implicitly raised in the corresponding layered ineffective assistance of counsel claim. Npimnee did not raise a layered ineffective claim on these grounds in his amended motion, and we will not consider it now. See *State v. Munoz, supra*.

The district court did not err in denying an evidentiary hearing on claim No. 9.

### f. Sufficiency of Evidence

Npimnee's claim No. 2 alleges that it was plain error for the Nebraska Supreme Court to determine on direct appeal that there was sufficient evidence to prove that Npimnee knew or should have known that S.M. was incapable of resisting when there was evidence to the contrary. While Npimnee did not assign the sufficiency of the evidence to support his conviction on direct appeal, the Supreme Court made this finding in connection with Npimnee's assigned errors regarding the jury instructions.

As relevant, the jury at Npimnee's trial was instructed as follows:

"Regarding the crime of Sexual Assault, 1st Degree, the State must prove beyond a reasonable doubt that

"1. . . . Npimnee did subject [S.M.] to sexual penetration; and

"2. (a) . . . Npimnee knew or should have known that [S.M.] was mentally or physically incapable of resisting or appraising the nature of his conduct; or

"(b) . . . Npimnee did so without the consent of [S.M.]; and

"3. . . . Npimnee did so on or about July 9, 2021, in Lancaster County, Nebraska.

"Under the law, the elements described in ¶2(a) and ¶2(b) constitute a single offense. As a result, you need not agree unanimously on whether (a) ... Npimnee knew or should have known that [S.M.] was mentally or physically incapable of resisting or appraising the nature of his conduct or (b) whether ... Npimnee did so without the consent of [S.M.], so long as you agree unanimously that the State has established either of the elements described in ¶2(a) and ¶2(b) beyond a reasonable doubt."

See *State v. Npimnee*, 316 Neb. 1, 7, 2 N.W.3d 620, 626 (2024).

On direct appeal, the Nebraska Supreme Court found that both theories were supported by the evidence at trial. See *State v. Npimnee*, 316 Neb. at 8, 2 N.W.3d at 627. The Court noted that the statute governing the crime of first-degree sexual assault requires an "individualized inquiry" into the victim's capacity to consent. See Neb. Rev. Stat. § 28-319(1)(b) (Reissue 2016). The Court ultimately concluded that the evidence in the case was sufficient for a jury to find that S.M. was so intoxicated as to be incapable of resisting Npimnee's actions.

Generally, an appellate court will find plain error only when a miscarriage of justice would otherwise occur. *State v. Anthony*, 320 Neb. 757, 30 N.W.3d 187 (2026). Npimnee's claim No. 2 was a necessary component in the Nebraska Supreme Court's analysis on direct appeal addressing

the jury instructions used at Npimnee's trial. Upon our review, we cannot find plain error and the district court did not err in denying an evidentiary hearing on claim No. 2.

### g. Cumulative Prejudice

In his amended postconviction motion, as well as in his brief on appeal, Npimnee argues that the combination of all issues identified in his amended motion resulted in cumulative prejudicial effect which necessitates the reversal of his conviction. We have found Npimnee's assertions of ineffective assistance of appellate counsel and sufficiency of the evidence claim to be procedurally barred, insufficiently pled, or otherwise without merit. Accordingly, Npimnee cumulative prejudice argument fails.

### 2. ACTUAL INNOCENCE CLAIM

Npimnee also assigns that a "fundamental miscarriage of justice" will occur if this court refuses to address the merits and plain errors of all the issues presented. Brief for appellant at 5. Npimnee asserts that this court should excuse any procedural bars to his claims. He also raises an "actual innocence" claim.

The Nebraska Supreme Court has rejected the argument that procedural bars in postconviction cases do not apply when a defendant is "actually innocent." See *State v. Lotter*, 311 Neb. 878, 976 N.W.2d 721 (2022). To the extent that Npimnee is attempting to allege a freestanding actual innocence claim, it was not raised in his amended postconviction motion, and thus, is not properly before this court.

### 3. SUPREME COURT'S ALLEGED FAILURE TO RECUSE

Npimnee assigns that the Nebraska Supreme Court failed to sua sponte recuse the trial judge "despite clear knowledge of the conflict of interest in the third judicial district." Brief for appellant at 5. Npimnee contends that this should have occurred prior to or during his postconviction proceedings.

Npimnee filed a civil lawsuit against the trial judge in the third judicial district the day before his sentencing hearing. The Nebraska Supreme Court appointed a judge from the first judicial district to serve as the judge for Npimnee's civil suit. The Supreme Court's appointment order did not reference the reason for the appointment of a judge from a different judicial district. Npimnee's civil lawsuit was later dismissed, with the appointed judge finding that Npimnee's credibility was "highly suspect" and that the timing of the civil suit could "best be characterized as retaliation" by Npimnee following the outcome of his criminal trial.

A defendant seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality. See *State v. Ezell*, 314 Neb. 825, 993 N.W.2d 449 (2023). Based on the record before us, we cannot say that Npimnee overcame the presumption of judicial impartiality. The Nebraska Supreme Court did not err in failing to recuse the trial judge prior to or during the postconviction proceedings.

### 4. ALLEGED FAILURE TO APPOINT POSTCONVICTION COUNSEL

Next, Npimnee assigns that the district court erred by failing to provide him with postconviction counsel.

There is no federal or state constitutional right to an attorney in state postconviction proceedings. *State v. Custer*, 298 Neb. 279, 903 N.W.2d 911 (2017). Under the Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq. (Cum. Supp. 2024), it is within the discretion of the trial court whether to appoint counsel to represent the defendant. *State v. Wetherell*, 289 Neb. 312, 855 N.W.2d 359 (2014), *disapproved on other grounds, State v. Goynes, supra*. When the defendant's motion presents a justiciable issue to the district court for postconviction determination, an indigent defendant is entitled to the appointment of counsel. Where the assigned errors in the postconviction motion before the district court are either procedurally barred or without merit, establishing that the postconviction proceeding contained no justiciable issue of law or fact, it is not an abuse of discretion to fail to appoint counsel for an indigent defendant. *Id*.

As we have found above, Npimnee has not alleged facts sufficient to entitle him to an evidentiary hearing on his postconviction claims. Npimnee has raised no justiciable issue of law or fact, and therefore, the district court did not abuse its discretion when it did not appoint counsel.

### 5. ALLEGED FAILURE TO GRANT SUMMARY JUDGMENT

Finally, Npimnee assigns that the district court erred in failing to grant his motion for summary judgment. The purpose of postconviction relief is to remedy prejudicial constitutional violations that render the judgment void or voidable. See *State v. Davis*, 317 Neb. 59, 8 N.W.3d 247 (2024) (postconviction relief is very narrow category of relief). As noted by the State in its brief, a summary judgment motion is not an appropriate filing in a postconviction proceeding.

## VI. CONCLUSION

The district court did not err in denying Npimnee's amended motion for postconviction relief without an evidentiary hearing. Npimnee additional claims on appeal fail.

AFFIRMED.